IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RICHIE LEE WASHINGTON, JR.,

    Petitioner,

v.                                                             Civil Action No. 3:16CV682

HAROLD W. CLARKE,

    Respondent.

## MEMORANDUM OPINION

Richie Lee Washington, Jr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his drug distribution convictions in the Circuit Court for the County of Amelia, Virginia ("Circuit Court"). Washington lists one "GROUND" in his § 2254 Petition that is comprised of one long paragraph with no subparts. The Court generously construes Washington to argue entitlement to relief upon the following grounds:[1]

| | |
|---|---|
| Claim One: | Counsel rendered ineffective assistance by failing to challenge Washington's "mental health status at the time of the alleged sales of a controlled substance." (§ 2254 Pet. 3.) |
| Claim Two: | Counsel rendered ineffective assistance by failing to request an "evaluation regarding [Washington's] competency to plead guilty to the controlled substance charges." (*Id.*) |
| Claim Three: | Washington's "plea of guilty was invalid because he was unaware of the consequences of his plea" and he had a "mental deficiency." (*Id.* at 4.) |
| Claim Four: | Counsel rendered ineffective assistance because he "provided incorrect advice pertinent to the plea." (*Id.*) |

---

[1] The Court corrects the capitalization, punctuation, and spelling in the quotations from Washington's submissions. The Court lists the claims in the order that Washington presents them in his "GROUND ONE."

| | |
|---|---|
| Claim Five: | Counsel rendered ineffective assistance by failing to "call experts on the issue of diminished capacity [that] ostensibly deprived the defendant of his only apparent defense." (*Id.*) |
| Claim Six: | Counsel rendered ineffective assistance when he failed to "put up a debate" about whether Washington's sentences could run concurrently. (*Id.*) |
| Claim Seven: | The Circuit Court erred by giving him an "excessive" sentence. (*Id.*) |
| Claim Eight: | Counsel rendered ineffective assistance when he failed to argue that Washington could have been sentenced to serve his "last three years . . . in a diversion and detention center." (*Id.*) |
| Claim Nine: | The Circuit Court erred in finding Washington was a second or subsequent offender. (*Id.*) |
| Claim Ten: | The prosecutor engaged in misconduct when he indicated that Washington had the ability to serve time in a "Diversion Center and Detention Center." (*Id.* at 5.) |

Respondent moves to dismiss the § 2254 Petition. Despite Respondent's provision of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) notice, Washington has not responded. For the reasons explained below, the Motion to Dismiss (ECF No. 16) will be GRANTED.

## I. PROCEDURAL AND FACTUAL HISTORY

A grand jury charged Washington with four counts of distribution of Schedule I or II controlled drugs, second or subsequent offense, and one count of sale of Schedule I or II controlled drugs on or near a school or library. (ECF No. 18-2, at 1.) On December 23, 2014, Washington pled guilty to three counts of distribution of Schedule I or II controlled drugs, second or subsequent offense, and one count of sale of Schedule I or II controlled drugs on or near a school or library, and the Commonwealth agreed to *nolle prosequi* the one remaining drug distribution charge. (ECF No. 18-1, at 1–4.) The Circuit Court sentenced Washington to an active sentence of nine years of incarceration. (ECF No. 18-3, at 3.) Washington filed no direct appeal.

On October 15, 2015, Washington filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. (ECF No. 18-5, at 1.) In his state petition, Washington raised the following claims for relief with little to no supporting argument:

> a. I was not sentenced by my mental health condition.
> b. I am a drug addict [and] I didn't get sentenced by mental health or drug addiction and I didn't get no help from courts.
> c. My lawyer didn't present my health issue in court but said the courts have my health file in court.
> d. I am on file previously for mental health in department of correctionals medical file.
> e. I was sentenced to 9 years on 3 charges of distribution of cocaine by the same informant all sales was made in 2 months span the punishment is harsh rather and cruel and unusual[.] All sales to one person one informant why no plea deal and the cocaine was small sales.

(ECF No. 18-5, at 3-4.)[2] On May 9, 2016, the Supreme Court of Virginia dismissed Washington's habeas petition. (ECF No. 18-6, at 1-2.)

## II. EXHAUSTION AND PROCEDURAL DEFAULT

### A. Applicable Law

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n. 10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state

---

[2] Under sections of the petition that did not permit Washington to list additional claims, Washington continued to address his Claim e and then tersely listed other conclusory errors, of counsel and the Circuit Court, not relevant here. (ECF No. 18-5, at 4.)

3

remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* Fair presentation demands that a petitioner present "'both the operative facts and the controlling legal principles'" to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the

4

exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[3] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

### B. Washington's Claims Are Defaulted

#### 1. Claims Barred From Review Here (Claims Seven, Nine, and Ten)

The five claims that Washington raised in his state habeas petition in no way resemble the ten claims he raises in his § 2254 Petition. Thus, the Court believes that all ten claims raised here are defaulted. Nevertheless, generously construing his state claims, the Court finds that, at most, Washington raised in his state habeas petition a claim similar to Claim Seven here. In Claim Seven, Washington challenges his sentence as excessive (§ 2254 Pet. 4), and in state court he claimed that his sentence was harsh and failed to take into account his mental health conditions. (*See* ECF No. 18–5, at 3–4 (Claims (a), (b), and (e)).) The Supreme Court found those claims (Claims (a), (b), and (e)) barred by the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because Washington could have raised, but failed to raise, these claims on direct appeal. (ECF No. 18–6, at 1–2.) *Slayton* constitutes an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Thus, Washington procedurally defaulted Claim Seven unless he demonstrates cause and

---

[3] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

5

prejudice to excuse his default or a fundamental miscarriage of justice. Washington fails to do so,[4] and Claim Seven will be DISMISSED.

Washington's remaining claims were not raised in his habeas petition filed in the Supreme Court of Virginia. In Claim Nine, Washington argues that the Circuit Court erred by sentencing him as a second or subsequent offender. (§ 2254 Pet. 4.) In Claim Ten, Washington argues that the prosecutor engaged in misconduct when he stated that Washington had the ability to serve time in a diversion and detention center. (*Id.* at 5.) Washington failed to raise either of these claims in his state habeas petition before the Supreme Court of Virginia. If Washington now attempted to raise Claims Nine or Ten in a state habeas petition, it would be barred as successive pursuant to Va. Code. Ann. § 8.01-654(B)(2), and would be barred pursuant to the rule in *Slayton*. Va. Code Ann. § 8.01-654(B)(2), like *Slayton*, constitutes an adequate and independent state procedural rule when so applied. *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000). Washington fails to demonstrate any cause and prejudice for his default or a fundamental miscarriage of justice. Thus, Claims Nine and Ten are defaulted and barred from review here, and they will be DISMISSED.

### 2. Claims with Alleged Cause for Washington's Default

In Claim Three, Washington contends that his "plea of guilty was invalid because he was unaware of the consequences of his plea" and he had a "mental deficiency." (§ 2254 Pet. 4.) Once again, Washington failed to raise this claim in his state habeas petition before the Supreme Court of Virginia. If Washington now attempted to raise Claim Three in a state habeas petition, it would be barred as successive pursuant to Va. Code. Ann. § 8.01-654(B)(2), and would be barred pursuant to the rule in *Slayton*. Thus, Washington has procedurally defaulted Claim

---

[4] As discussed below in conjunction with Claim Six, even if Washington attempted to fault counsel for failing to challenge his sentence as "excessive when considering it could have run concurrently," (§ 2254 Pet. 4), that claim lacks merit and thus would not excuse his default.

6

Three. To the extent that Washington claims that counsel is the cause for his default, as discussed below in Claims Two and Four, Washington fails to demonstrate any prejudice, because his voluntary and intelligent guilty plea waived all non-jurisdictional defenses antecedent to his guilty plea. *See Peyton v. King*, 169 S.E.2d 569, 571 (Va. 1969). Accordingly, Claim Three is defaulted, barred from review here, and will be DISMISSED.

In the remaining six claims (Claims One, Two, Four, Five, Six, and Eight), Washington contends that counsel rendered ineffective assistance during all facets of his criminal proceedings. Washington raised no claim of ineffective assistance of counsel in his state habeas petition before the Supreme Court of Virginia. Nevertheless, Respondent acknowledges that, pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the fact that Washington had no counsel at his "initial-review collateral proceeding" may establish cause for the procedural default of these claims. *Martinez*, 566 U.S. at 16. Moreover, in light of the apparent lack of merit of these claims, judicial economy dictates that the Court address the substance of each.

### III. FACTUAL BASIS FOR PLEA AND GUILTY PLEA PROCEEDINGS

In his written guilty plea agreement, Washington agreed that the maximum penalty for distribution of Schedule I or II controlled drugs, second or subsequent offense, was life imprisonment, and that sale of Schedule I or II controlled drugs on or near a school or library had a maximum penalty of five years of imprisonment. (ECF No. 18–1, at 1–2.) In exchange for his guilty plea, the Commonwealth agreed to *nolle prosequi* one drug distribution charge and agreed to not ask to have Washington's suspended time from his prior convictions revoked. (*Id.* at 2.)

Before the Circuit Court accepted Washington's guilty plea, the Circuit Court conducted a plea colloquy to ensure that Washington's plea was entered into knowingly, freely, and voluntarily. During the guilty plea hearing, Washington agreed that he discussed with his

counsel what the Commonwealth would need to prove before he could be found guilty and any possible defenses. (Dec. 23, 2014 Tr. 7.) Washington agreed that he decided for himself to plead guilty, that he entered into the guilty plea voluntarily, that he was pleading guilty because he was in fact guilty of the crimes charged (Dec. 23, 2014 Tr. 7), and that no one had threatened or coerced him into pleading guilty (Dec. 23, 2014 Tr. 9). Washington agreed that he understood that by pleading guilty he "[gave] up his right to a jury trial, the right to present a defense, the right to confront the witnesses against [him] and the right to file an appeal[.]" (Dec. 23, 2014 Tr. 8.) The Circuit Court asked Washington whether he was currently under the influence of drugs or alcohol and Washington responded: "When I committed the crimes I was." (Dec. 23, 2014 Tr. 8.) The Circuit Court further questioned:

> THE COURT: What I'm getting at is that I need to make sure that you are not under the influence of anything that would interfere with your ability to understand what we are talking about today.
>
> MR. WASHINGTON: Oh, okay.
>
> THE COURT: So is the answer to that question no, sir?
>
> MR. WASHINGTON: Yeah.

(Dec. 23, 2014 Tr. 8–9.)

Washington affirmed his understanding that each of the three drug distribution counts carried a maximum penalty of life imprisonment and a mandatory minimum sentence of three years. (Dec. 23, 2014 Tr. 9.) Washington also agreed that he understood that the maximum penalty for selling drugs near a school was five years of imprisonment. (Dec. 23, 2014 Tr. 9.) Washington also agreed that he was entirely satisfied by his counsel's assistance in the case. (Dec. 23, 2014 Tr. 10.)

The Commonwealth then summarized the evidence that would have been put forth if Washington had proceeded to trial:

> MR: HARRISON: .... The first [drug distribution] occurred on March the 10th of this year.
>
> The initial contact was at Park House Branch Drive here in Amelia, which the [under]cover agent purchased cocaine from the defendant, and at that time they asked for some more. They agreed that they would deliver it and pa[y] for it at a separate time and a separate place which was Chula Junction. Later that day they did meet a[t] Chula Junction and did consummate the sale.
>
> In discussing the matter with Mr. McGarvey, the Commonwealth agreed that this was a set agreement on time, and the delivery occurred at another time.
>
> ....
>
> ... So, in essence, when you made the first sale, you agree to make the second sale, and did it at a different time while maybe technically that's a second sale. We felt that the proper way of handling is just one sale. That's why we nolle pro[ssed] the second charge on Mr. Washington on 10th of March.
>
> ....
>
> MR: HARRISON: Judge, the second one occurred March the 12th at Wingo Apartments here in Amelia County, which is up here on basically at the corner of Five Forks and Virginia Street.
>
> The sale occurred in the common area of the apartments, and there is actually on one of the videos showing people going up the stairs. ...
>
> ....
>
> MR. HARRISON: Okay. [The Wingo Apartments] are within a thousand [feet] of two schools.
>
> ....
>
> THE COURT: Okay. Then it's stipulated that the March 12th transaction met the statutory requirement for proximity to the school?
> MR. HARRISON: Yes, sir.
> MR. MCGARVEY: That's correct, Judge.
>
> ....
>
> MR. HARRISON: Judge, the third offense occurred on March the 19th, again at Park House Branch Road. Undercover agent purchased cocaine from the defendant as in the two previous cases. Of course, you have the video. ...
>
> ....
>
> MR. HARRISON: Judge, our last exhibit would be the sentencing order on Mr. Washington from [his] April conviction here for the intent to distribute for the second offense.
> THE COURT: All right. The sentencing order that was entered May 6th, 2008, will be admitted into evidence ....

(Dec. 23, 2014 Tr. 12–17.)

After hearing the evidence against him, the Circuit Court asked Washington whether he understood everything that "we've talked about" and Washington agreed that he did. (Dec. 23, 2014 Tr. 18.) Washington indicated that he did not have any questions. (Dec. 23, 2014 Tr. 18.) The Circuit Court found that the evidence was sufficient to find Washington guilty of the four

9

counts, accepted Washington's guilty plea, and found Washington guilty as charged. (Dec. 18, 2014 Tr. 18.)

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). An assertion by Washington that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing

10

*Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

As discussed below, Washington's claims are vague, conclusory, belied by the record, and entirely lacking in merit.

### B. Purported Ineffective Assistance Prior to Entry of Guilty Plea

In Claim One, Washington contends that counsel rendered ineffective assistance by failing to challenge Washington's "mental health status at the time of the alleged sales of a controlled substance." (§ 2254 Pet. 3.) Similarly, in Claim Five, Washington argues that counsel failed to "call experts on the issue of diminished capacity [that] ostensibly deprived the defendant of his only apparent defense." (*Id.* at 4.) Washington provides no further supporting argument after the statement of these claims and he fails to identify why he believes counsel should have pursued a defense based on his "mental health status" or "diminished capacity." Washington's terse and conclusory allegations fail to demonstrate deficient performance or prejudice under *Strickland*. *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir 1990) (requiring proffer of mitigating evidence to state claim of ineffective assistance); *see Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of habeas relief appropriate where petitioner

"stated only bald legal conclusions with no supporting factual allegations"). Claims One and Five lack merit and will be DISMISSED.

In Claim Two, Washington argues that counsel rendered ineffective assistance by failing to request an "evaluation regarding [Washington's] competency to plead guilty to the controlled substance charges." (§ 2254 Pet. 3) The Court finds scant supporting argument for this claim scattered throughout his summary of his claims. Washington argues: "Petitioner is not claiming to be mentally retarded, but that there exist[ed] a mental deficiency that his attorney should have acted on his behalf by requesting an evaluation, prior to a plea of guilty." (*Id.* at 4.) Later he suggests:

> [B]ecause of Petitioner's mental condition, he did not intelligently make this plea .... The Court's records, including the "Presentence Report" and testimony given at the sentencing hearing by his mother, will support that Petitioner had mental problems and was taking psychotic drugs for his mental problems prior to his incarceration. He needed these drugs in order to function normally, and during his incarceration he was not given these medications.

(*Id.*) Finally, Washington indicates that because he was not administered these unidentified drugs during his incarceration, "his thinking capacity was [not] up to par." (*Id.* at 5.) Washington's conclusory statements about his competency to plead guilty are belied by the record and foreclosed by his validly entered guilty plea.

First, Washington fails to identify from what mental condition he suffers and how that condition or a lack of medication for that condition rendered him unable to understand and enter into a knowing and voluntary guilty plea. Washington also fails to establish that his guilty plea was not knowing and voluntary by his vague statement that, without the unidentified medication, "his thinking capacity was [not] up to par." (*Id.* at 5). Through these conclusory allegations, Washington fails to identify any deficiency of counsel or resulting prejudice from counsel's failure to investigate or to challenge his competency to enter into a guilty plea. *See Sanders*, 373 U.S. at 19. Second, prior to accepting and entering Washington's guilty plea, the Circuit Court

questioned Washington about whether he understood the charges and evidence against him, whether he was satisfied with counsel's services, and whether he was pleading guilty because he was indeed guilty, and Washington answered in the affirmative each time. (Dec. 23, 2014 Tr. 7–9, 18.) At the end of the hearing, the Circuit Court again asked Washington whether he understood everything that "we've talked about" and asked Washington if he had any questions, and Washington agreed he understood and had no questions. (Dec. 23, 2014 Tr. 18.) Washington's conclusory statements here, that he suffered from a mental defect or lacked medication thereby rendering his plea not knowing or voluntary, does not amount to "clear and convincing evidence" to negate his sworn statements at the plea hearing that he understood the charges and evidence against him. *See Fields*, 956 F.2d at 1299.

In Claim Four, Washington suggests that counsel rendered ineffective assistance because he "provided incorrect advice pertinent to the plea." (§ 2254 Pet. 4.) Washington wholly fails to identify what incorrect advice counsel provided to him. To the extent that Washington suggests that he was "unaware of the consequences of his plea" (*id.*), he again fails to identify what consequences he did not understand. Washington identifies no deficiency of counsel and no resulting prejudice from these vague allegations. *See Sanders*, 373 U.S. at 19. Moreover, his sworn statements at the plea hearing that he understood the consequences of his plea belie his contentions here.

Finally, with respect to Claims Two and Four, Washington also fails to demonstrate any prejudice because his guilty plea resulted in Washington receiving a significantly lower sentence. As discussed below in conjunction with Washington's claims pertaining to sentencing, Washington faced a life sentence if he had decided not to plead guilty and proceed to trial. Instead, through his guilty plea, he received the mandatory minimum sentence of three years on each of his drug distribution counts, for a total of nine years of incarceration. Moreover, in

exchange for his guilty plea, the Commonwealth agreed not to seek any revocation of suspended time from his many previous convictions.[5] In light of the sentencing benefits he received by pleading guilty, he fails to demonstrate that, but for any error of counsel, a reasonable defendant would have insisted on not pleading guilty and going to trial. Claims Two and Four lack merit and will be DISMISSED.

### C. Purported Ineffective Assistance at Sentencing

In Claim Six, Washington argues that counsel rendered ineffective assistance when he failed to "put up a debate" about whether his sentences could run concurrently. (§ 2254 Pet. 4.) In support of this claim, Washington contends that:

> Even though counsel did emphasize that Va. Code [Ann. §] 18.2–248 did mandate mandatory and consecutive sentences for convictions under this statute, counsel further stated upon the court record at sentencing that they [the offenses charged] are "the same charges and therefore could run concurrently." The Court responded, "I realize that the mandatory minimum sentence is for [sic] certain sentences are debatable." Under Virginia law, a concurrent sentence on all charges was warranted, yet only one charge was ran in such away [sic]. Because counsel did not put up a debate, the Court, by its discretionary intent, sentenced Petitioner to the lowest sentence he thought was possible. Said sentence was excessive when considering that they could have run concurrently.

(*Id.*) Washington fails to demonstrate any deficiency of counsel or resulting prejudice. The Virginia statute[6] strictly prohibited the Circuit Court from sentencing Washington to concurrent sentences on the three drug distribution counts as they were three separate charges on three separate days. Nevertheless, counsel attempted to persuade the Court that "they [were] the same

---

[5] From the Presentence Report prepared for Washington's sentencing, it appears that Washington had nearly thirty-five years of suspended sentences. Pre-Sentence Report at 10, *Commonwealth v. Washington*, Nos. CR14000074–00 through CR14000074–04 (Va. Cir. Ct. filed Apr. 3, 2015).

[6] Virginia Code section 18.2–248(C) states in relevant part: "Upon a second conviction of such a [controlled substances] violation . . . any such person may, in the discretion of the court or jury imposing the sentence, be sentenced to imprisonment for life or for any period not less than five years, three years of which shall be a mandatory minimum term of imprisonment to be served *consecutively* with any other sentence . . . ." Va. Code Ann. § 18.2–248(C) (West 2017) (emphasis added).

14

charges and therefore they could run concurrently possibly." (Mar. 20, 2015 Tr. 9.) However, any argument put forth by counsel could not alter the fact that the Circuit Court was required by law to run the three drug distribution counts consecutive to one another. Thus, to the extent that Washington claims that counsel "did not put up a debate" (§ 2254 Pet. 4), there was nothing further counsel could have done that would have resulted in a concurrent sentence. Thus, Washington fails to demonstrate any deficiency of counsel or resulting prejudice. Claim Six lacks merit and will be DISMISSED.

Finally, in Claim Eight, Washington faults counsel for failing to argue that Washington could have been sentenced to serve his "last three years ... in a diversion and detention center." (§ 2254 Pet. 4.) Washington contends that "according to statutory authority, the Court could have allowed the last three years to be served in a diversion and detention center, especially when considering Petitioner's mental problems, but his counsel did not argue this sentence, but only requested it." (§ 2254 Pet. 4.) Washington fails to identify what more counsel should have done to "argue" that he should be permitted to serve the end of his sentence in such a facility.

Under Virginia law, the Circuit Court had the discretion to allow Washington to serve a portion of his sentence in a detention center or in a diversion program. *See* Va. Code Ann. § 19.2-316.2(A) (West 2017) (explaining that a defendant "may be considered for commitment to a detention center"); Va. Code Ann. § 19.2-316.3 (West 2017) (explaining that a defendant "may be considered for commitment to a diversion center"). Counsel specifically requested that "the Court ... consider [a] diversion and detention program towards the end -- the six[th] year of his commitment, and then home monitoring after that. He would have served 6 years at that point. He will come out with some rehabilitation." (Mar. 20, 2015 Tr. 9.) Counsel further argued, "What I'm asking the Court to do is to consider diversion and detention at the end to prepare him to reenter society after 6 years ...." (Mar. 20, 2015 Tr. 10.) The Circuit Court

reviewed the Presentence Report, which included Washington's mental health records and specific circumstances, and heard counsel's argument but, nevertheless, denied the request for home incarceration and diversion. (Mar. 20, 2015 Tr. 13.) Washington fails to identify, and this Court fails to discern, what more counsel could have argued to change the Circuit Court's discretionary decision to deny Washington's request for detention or diversion. Washington had already received the mandatory minimum sentences for his crimes, a sentence well below the recommended guidelines range of thirteen years and three months to twenty-one years and nine months of incarceration. (*See* Mar. 20, 2015 Tr. 13.) Washington simply fails to establish any deficiency of counsel or resulting prejudice. Accordingly, Claim Eight will be DISMISSED.

## V. CONCLUSION

Respondent's Motion to Dismiss (ECF No. 16) will be GRANTED. The § 2254 Petition will be DENIED, and Washington's claims will be DISMISSED. The action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

(1983)). Washington fails to meet this standard. Accordingly, a certificate of appealability will be DENIED.

An appropriate order will accompany this Memorandum Opinion.

/s/ *(signature)*
Roderick C. Young
United States Magistrate Judge

Date: September 1, 2017
Richmond, Virginia